1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division


------------------------------:
                              :
DAVID TAMBLAY,                :
              Plaintiff,      :
                              :
    -vs-                      :         Case No. 1:14-cv-130
                              :
                              :
EQUIFAX INFORMATION SERVICES  :
LLC, et al.,                  :
              Defendants.     :
                              :
------------------------------:




HEARING ON MOTIONS


August 29, 2014


Before:  Ivan D. Davis, Mag. Judge






APPEARANCES:

Kristi C. Kelly, Counsel for the Plaintiff

John W. Montgomery, Jr., Counsel for the Defendants

1          NOTE:  The case is called to be heard at 10:02, but

2    the audio recording of the hearing begins at 10:09 a.m. as

3    follows:

4          THE COURT:  I hate to have to ask you to start again,

5    but if we want a transcript of this, an accurate transcript, I

6    am going to have to do just that.

7          MS. KELLY:  I would be happy to.

8          So there are just a few things that we would like to

9    highlight from our reply or things that we may not have

10   addressed in Equifax's response to our motion to compel for

11   Your Honor.  As I understand, you are familiar with the

12   pleadings and our arguments.

13         The first is regarding the ACDV operators who Equifax

14   alleges are the Serco employees.  And while it wasn't in our

15   brief when I was reviewing the contract this morning, I was

16   able to identify a more relevant provision, and it's subject to

17   the protective order in this case, but it is section 3.9 under

18   Employees.  And it specifically contemplates a situation like

19   this and says:  In the event that Equifax commences or is

20   engaged by a third party in a lawsuit with respect to the

21   services, provider shall provide Equifax access to all directly

22   relevant provider employees and subcontractors for interviews

23   and depositions and the like.

24         And I've provided a copy to Your Honor and Mr.

25   Montgomery.

1          In addition, the plaintiffs don't believe that it

2    would be burdensome for the defendant to produce the ACDV

3    operators because we've offered to do it by video conference,

4    and it would be at the cost of the plaintiff.  With technology

5    today, it's not necessary to have both parties in the same

6    room.  And we believe that we could accomplish the deposition

7    by video conference.

8          We were just provided the names of the individuals on

9    Wednesday, but we have not received their addresses or any

10   contact information for the individuals who conducted the

11   disputes in our client's credit file.

12         And so, we would ask that if the Court were to not

13   order us to subpoena them, but rather order Equifax to produce

14   them, or if we are required to subpoena these individuals, that

15   we be given their names and addresses and contact information.

16         In addition, in that same section, the paragraph

17   right before the one I cited to the Court of the employment

18   agreement with Equifax and Serco, Your Honor can see that these

19   ACDV operators are essentially under the control of Equifax.

20   Equifax has the authority to terminate Serco employees with

21   notice to Serco if they determine that the employees aren't

22   doing their job.

23         In addition, there was just a 30(b)(6) deposition of

24   Equifax yesterday, and Equifax provides all the training and

25   the policies and procedures for these employees to follow.

1          In the Calderon and Tomingas case the Court analyzed

2    what a managing agent is.  And it specifically stated that the

3    term "managing agent" shouldn't be given too literal an

4    interpretation.  So it need not be a vice-president, but rather

5    someone who has the functions, responsibilities, and authority

6    respecting the subject matter of the litigation.

7          And at the heart of this litigation is the

8    reasonableness of the investigation.  And these individuals are

9    the individuals that actually conducted the investigation.

10   They are given policies and procedures to follow, but they are

11   given the discretion to implement these policies and procedures

12   in determining whether to delete or keep an item in an

13   individual's credit file.

14         And so, for that reason, we would ask that Your Honor

15   compel the production of these witnesses for a deposition by

16   video conference.

17         We were also provided a copy of the employment

18   agreement between Equifax and Serco, who is the employer for

19   the ACDV operators.  However, it's redacted.  No privilege log

20   has been produced.  There is a protective order in place.

21         And so, we would ask that an unredacted copy of the

22   contract be provided to us.

23         THE COURT:  You mean the contract that this was in?

24         MS. KELLY:  Yes.

25         THE COURT:  Oh, I thought you began by saying you

1    just last night or something you were provided an unredacted

2    version.

3            MS. KELLY:  Oh, no -- it is redacted -- I'm sorry.

4    We were provided a copy of this contract, but a lot of the

5    portions are redacted.

6            And so, we would like a full copy that is unredacted

7    because no privilege log or -- has been produced.  And also,

8    there is a protective order in place.

9            We also are asking the Court to compel the production

10   of all frozen scans from February 2009 to the present.  And the

11   frozen scans are the monthly snapshot of a consumer's file.

12   And so, it's necessary for us to identify when a derogatory

13   item came into my client's credit file or when an incorrect

14   address was placed on the file so we can identify how his file

15   became mixed with that of what we believe is his father's.

16           THE COURT:  Is it your understanding that the first

17   piece of inaccurate information in his credit report was placed

18   in that file in 2009?

19           MS. KELLY:  There is a five-year statute of

20   limitations under the FCRA, or two years from the date of

21   discovery.  And so, it would be relevant for the purposes of

22   litigation.

23           We actually don't know because we haven't seen the

24   frozen scans.  And so, we would like to know because part of

25   the 1681e(b) claim is whether -- whether there is inaccurate

1    information and when it occurred.  And whether at the time

2    there was inaccurate information, it was published to a third

3    party.

4           And so, the frozen scans would let us see if the

5    credit file with inaccurate information was provided to a third

6    party.

7           And so, we had originally met and conferred with

8    Equifax and given them discovery extensions, and they said that

9    they would provide us at least quarterly frozen scans so our

10   expert could do his report.  They did not do that until just

11   two days ago, and they have only provided us the quarterly

12   scans.  We have requested each month's scans.

13          And so, we would ask the Court to provide us each

14   month's frozen scans for the past five years so that we can

15   properly prosecute our case.

16          Equifax does not deny that it is relevant

17   information.  And their only response was that they provided

18   some of the frozen scans already.  They didn't provide them

19   all.

20          We would also request that the Court compel complete

21   responses to the interrogatories regarding previous lawsuits

22   and the matching criteria that Equifax uses for credit

23   file (unintelligible).  These both go to willfulness.  Your

24   Honor's ordered relevant lawsuits in the past litigation, FCRA

25   litigation.

1          Saying that it's burdensome is disingenuous.  Equifax

2    uses the same counsel for all cases.  They have one law

3    department.  And so, it is difficult to believe that it would

4    be burdensome for them to produce a list of mixed file cases or

5    cases where someone disputed the validity or the reasonableness

6    of an investigation.

7          And the last item that plaintiffs are seeking is to

8    compel documents to ascertain the net worth or a stipulation of

9    net worth.  Equifax indicated in its response that it provided

10   the net worth.  It actually sent us an e-mail providing the net

11   operating income, which is different from the net worth.

12         We have obtained the annual report.  And Equifax,

13   Inc., the parent company, its net shareholder equity is about

14   2.6 billion.

15         And the Equifax Information Services, who is the

16   defendant in this matter, based on the combined balance sheet,

17   they seem to account for two-thirds of that income.

18         And so, based on my experience in other cases with

19   other credit bureaus, I don't believe that the net operating

20   income is an accurate reflection of Equifax's net worth.

21         We have offered a stipulation that its net worth is

22   at least 1 billion, and we haven't heard back.

23         And so, we would ask that the Court order that they

24   at least provide a 30(b)(6) witness.  We could depose their

25   comptroller to produce the net worth.  We sent topics, and they

1   just have yet to identify someone to sit for a deposition on

2   those topics.

3           And so, in the alternative, we would ask the Court to

4   order that they provide the individual balance sheets and

5   accounting information that they used to derive the combined

6   balance sheet in their annual report where it discusses each --

7   the net worth of Equifax, Inc., the parent company.

8           And that's all.  Thank you.

9           THE COURT:  Thank you.  Before you begin, let's take

10  care of at least one administrative matter.

11          MR. MONTGOMERY:  Yes, Your Honor.

12          THE COURT:  Is there some reason that your opposition

13  to this motion came in at 11:18 p.m. on Wednesday rather than

14  by 5 p.m. as pursuant to the Local Rules?

15          MR. MONTGOMERY:  Your Honor, I'll begin by saying

16  what I learned as a cadet, there is no excuse for the delay.

17          Judge, I will offer as a matter of extenuation two

18  matters.  One is I was operating remotely, and went to the

19  court's Web site which laid out the expedited process for

20  dealing with discovery.  It did not provide the 5 p.m. cutoff.

21  Your law clerk had shared with me and pointed out to me where I

22  had overlooked that in one of Your Honor's orders, or one of

23  the court's orders.

24          And then secondly, because my client is in Atlanta

25  and there was some gathering of affidavits and assertions, it

9

1    took me a significant period of time to do so.

2            So I will offer that to Your Honor.

3            THE COURT:  All right.  Well, for future reference,

4    that could be a significant negative impact on motions that are

5    propounded on the Court.  Pursuant to the court's Local Rules,

6    if an opposition does not come in by 5 p.m. on the Wednesday

7    before the Friday, this Court has the authority to consider the

8    motion unopposed.

9            MR. MONTGOMERY:  Yes, Your Honor.  Duly noted.

10           Judge, Your Honor, as I said, John Montgomery on

11   behalf of Equifax.

12           And may it please the Court, as briefly as possible,

13   I think it's important for us to begin in the reply brief that

14   was received in support of the plaintiff's motion.  The first

15   three or four pages were a continuation, an explanation of what

16   has occurred in other cases.  And going back, the most recent

17   of those was 2007.  And I think it is in an effort to say

18   because of all the thousands of cases that Equifax is involved

19   in, and these cases, the most recent of which was now five

20   years ago or six years ago, because the Court cited in an --

21   the Eighth Court sided in a discovery dispute with the

22   plaintiff in that case, therefore, Equifax must be wrong in

23   these cases.

24           And we believe that would be inappropriate.  And we

25   would ask that those portions of the brief be struck.

1        Now, going to the substance which picked up at about

2   page 4, and I will try to address those in order in which they

3   came forward.  The ACDV operators, Judge, even with the -- with

4   the additional information that was provided today, it's

5   important to note that the contract provides -- first of all,

6   let's distinguish this from Calderon for a moment.  In that

7   particular case, the Experian employees in Chile or Chile, it

8   was actually a sister company of Experian, and in fact under

9   the same umbrella as its parent company.

10       And the Court found in that particular case, in

11  compelling Experian to produce those witnesses, that they

12  were -- the companies were so closely related because they were

13  in fact of common ownership and everything else.

14       The provisions that the plaintiff points to today

15  about the agent and management and the control of those persons

16  and whether -- if you read that carefully, what the Court is

17  talking -- is speaking to, it's not speaking to the order which

18  was attached in the motion to compel.  Rather, it's speaking to

19  whether those persons testifying can bind the company to their

20  testimony.  Not whether it's up to Experian to produce them or

21  whether they are third party -- subject to being subpoenaed and

22  a deposition taken in that matter.

23       I would suggest -- we would suggest to the Court,

24  Your Honor, even with this additional information here, they

25  remain a third party outside of the -- outside of the

1    litigation.  The fact that by the contract that Equifax is to

2    have access to them is not -- if the notion was that we have a

3    contract that says that our vendor, our third-party vendor

4    shall produce them in the event of a third-party litigation,

5    then we would be in a different circumstance.

6           But here we are to have access to them.  I don't

7    believe that we have the right to compel them, those

8    individuals who may not even be employed by that company any

9    longer, to appear as witnesses in a lawsuit here in Virginia.

10           THE COURT:  Well --

11           MR. MONTGOMERY:  Yes, Judge.

12           THE COURT:  You make an argument in your opposition

13   that you have -- well, the main argument is they are not your

14   employees.  The Court would tend to agree.  But then you make

15   the argument that they are not under your control.

16           Have you asked Serco to produce them?

17           MR. MONTGOMERY:  We have not, Judge.

18           THE COURT:  How do you know they are not under your

19   control then?  How can you make that argument -- if you asked

20   them, Serco may believe that the contract between Equifax and

21   Serco is so lucrative for Serco that they believe they have no

22   option but to produce them, especially based on these

23   paragraphs -- at least paragraph 3.9 in the contract between

24   Equifax and Serco.

25           So if you haven't even asked, how do you know you

1  don't have any control over them?

2          MR. MONTGOMERY:  Judge, I think that the point would

3  be that we don't have the ability to compel those individuals.

4          THE COURT:  Well, that's not what you argued though.

5  I'm not saying you have the ability to produce them --

6          MR. MONTGOMERY:  Yes, sir.

7          THE COURT:  -- or compel their production.  But you

8  surely have the ability to instruct Serco to produce them.  And

9  that's exactly what this Court is going to order you to do,

10 instruct Serco to voluntarily produce these ACDV operators for

11 purposes of a deposition without the need for a subpoena.

12         They may not think this contract is lucrative enough

13 and may say, we're not going to listen to you.  Well, if that's

14 the case, then the plaintiff has another option.  But before we

15 get to that option, you're going to instruct them to produce

16 them.

17         MR. MONTGOMERY:  Yes, Your Honor.  And that moves me

18 along to the next point.

19         On the issue of the frozen scans, Your Honor.  It's

20 not -- in these other cases that were relied upon, in those no

21 frozen scans have been produced.  Here we have produced frozen

22 scans over a quarter back to the first point of which there has

23 been any allegation in the complaint of a deficiency in the

24 credit history or the credit report.

25         THE COURT:  But their position is at some point in

1    time Equifax placed inaccurate information in the credit file

2    of the plaintiff.  You've produced four out of 12 per year.

3    What if you're correct and there is no inaccurate information

4    in those four, but there could be inaccurate information in the

5    other eight?

6         MR. MONTGOMERY:  Your Honor, we believe that those

7    four scans over that period of time would result in the

8    discovery of those inaccurate information.

9         THE COURT:  And it's your position that plaintiff is

10   required to concede to your beliefs?

11        MR. MONTGOMERY:  No, Judge.  It's our position that

12   the --

13        THE COURT:  All frozen scans will be produced.

14        MR. MONTGOMERY:  Okay.  Yes, Your Honor.

15        Your Honor, may I clarify?  May I ask for a

16   clarification?  They have sought them back to 2009, and there's

17   -- which, of course, is a significant period longer.  It's five

18   years basically, five years of frozen scans.  Versus 2012,

19   September 2012 when they allege that for the first time there

20   was ever a complaint brought.  And that's when everything began

21   regarding whether we corrected them or not.

22        THE COURT:  Well, that just may be because the

23   plaintiff first noticed a problem in 2012 because she may have

24   not requested her credit report until 2012 because there may

25   not have been any reason to.  That doesn't mean that inaccurate

14

1   information has not been placed in a credit report before the

2   first time she noticed it.

3           It's back to 2009.

4           MR. MONTGOMERY:  Yes, Judge.  I appreciate your

5   patience here one moment, Your Honor.

6           Your Honor, on the issue of previous complaints,

7   lawsuits, and allegations of -- from consumers.  Literally,

8   Equifax receives thousands of complaints from consumers of a

9   whole variety of things.

10          THE COURT:  And you don't see a problem with that?

11          MR. MONTGOMERY:  Judge, I do see a problem with that.

12  I understand, I understand completely.  But, Judge, some of

13  those complaints are similar to complaints I'm sure the Court

14  receives.  Or I serve on the School Board in Henrico, and we

15  receive complaints of all -- some of which have nothing to do

16  with the task that we -- that we are obligated to provide under

17  the statute.

18          So what is being sought is required for us to go back

19  and look at all of these complaints, and then cull out of those

20  complaints those which are relevant to their requests about

21  either a mixed file or similar -- identity theft similar to

22  what has been alleged in this particular case.

23          THE COURT:  Are these complaints not on an electronic

24  database?

25          MR. MONTGOMERY:  Judge, they are on an electronic --

1    they are maintained, but they are not indexed by the type of

2    complaint.

3            THE COURT:  Are they searchable?

4            MR. MONTGOMERY:  Your Honor, I don't know the answer

5    to that, but they are not indexed.

6            THE COURT:  Well, if your answer was no, you would

7    have had a better argument.  The answer being you don't know,

8    then you lose.

9            MR. MONTGOMERY:  Judge --

10           THE COURT:  Because if it's searchable, it's not a

11   burden.  You key in search terms and you find -- it's not like

12   you have to manually pull every one of these complaints and

13   look through them to see whether or not they relate to the

14   reasonableness of an investigation.  You put those search terms

15   in the electronic database and your computer, database, and

16   software will find those complaints.

17           MR. MONTGOMERY:  Your Honor, may I ask suggest that

18   it's not that straightforward as the Court and I might think in

19   that the way in which they are stored is not necessarily a way

20   in which they are searchable to find the terms which you

21   described.

22           They are searchable to find perhaps by date or

23   perhaps by who made the allegation or things of that nature,

24   but not in the manner in which we could easily just print out a

25   list of those.

1            What I would suggest to the Court --

2            THE COURT: So you're representing to the Court that

3  their database can't search by key terms?

4            MR. MONTGOMERY: Judge, I don't know the technical --

5  I don't know all the technical abilities of the database.

6            THE COURT: Well then, without having that knowledge,

7  you're going to be required to have to search them. If you

8  attempt to search them and find out that they are not

9  searchable by keyword, then you may have an argument as to

10  overly burdensome.

11            MR. MONTGOMERY: Yes, Your Honor. And, Judge, if I

12  may --

13            THE COURT: But only complaints concerning the

14  reasonableness of the investigation.

15            MS. KELLY: Your Honor, if I may, we also had the

16  mixed file complaints, that being an e(b) claim in addition to

17  the 1681i claim.

18            THE COURT: And mixed files.

19            MS. KELLY: Thank you.

20            MR. MONTGOMERY: And then finally, Your Honor, the

21  conversation regarding the company's net worth. I asked much

22  detail about this. It is not as simple as the plaintiff may

23  suggest, Judge.

24            Equifax Information Services LLC is a subsidiary of

25  its parent company. It does not compute or maintain a separate

1    net worth.  It has certain reporting obligations to its company

2    that are then consumed and involved in the reports to the

3    federal government and some of the regulatory matters, but

4    there is no separate net worth.  And it's not a simple

5    calculation that I could do on my own, for example, just

6    removing my liabilities from my --

7              THE COURT:  Well, what numbers do the LLC report to

8    the parent?

9              MR. MONTGOMERY:  Judge --

10             THE COURT:  It has to report some numbers.

11             MR. MONTGOMERY:  It does, it reports its revenue --

12   it reports -- revenue, net revenue or loss or gain, and some of

13   its expenses.  But it does not, it does not report -- it does

14   not have a separate line that it reports, my understanding,

15   regarding what would be the equivalent of a net worth.

16             THE COURT:  Do they have sufficient enough financial

17   information in their possession to stipulate to the fact that

18   their net worth is at least a billion dollars?

19             MR. MONTGOMERY:  I don't think so, Your Honor.  You

20   mean at least a billion?  There is a number that they --

21             THE COURT:  Or a billion.  Which she said she sent a

22   request for you to stipulate to that.  Does Equifax, LLC have

23   sufficient enough financial information in its possession to

24   make the determination on whether or not they could stipulate

25   to the fact that their net worth is a billion dollars?

1        MR. MONTGOMERY:  They have sufficient information to

2   stipulate -- to reach a stipulation of net worth.  I can't say

3   that it's a billion.  I don't think that we -- we have offered

4   a stipulation in other cases--

5        THE COURT:  So they have sufficient enough financial

6   information in their possession to stipulate to a net worth?

7        MR. MONTGOMERY:  Yes, Judge.

8        THE COURT:  Then they will so stipulate.

9        MR. MONTGOMERY:  Yes, Judge.

10        THE COURT:  And hopefully it will be a reasonable

11   stipulation.  Because if they stipulate to $2,000, this Court

12   may then order them to produce the underlying documents upon

13   which they came to that conclusion.

14        MR. MONTGOMERY:  Yes, Your Honor.  Your Honor, if I

15   may have just a minute.

16        Your Honor, I don't see anything further that was

17   before the Court or that I need to otherwise respond to.

18   Unless there is a question from the Court, that concludes my

19   presentation.

20        THE COURT:  Is there anything further?

21        MS. KELLY:  Yes, Your Honor, there are just two

22   items.  First is the unredacted contract with the third-party

23   vendors.

24        THE COURT:  That will be produced.

25        MS. KELLY:  Okay.  Thank you, Your Honor.

19

1          And then the second one was interrogatory 6, the

2     policies, the documents, studies, files about the matching

3     criteria.  All we really want is the matching criteria policy,

4     which would explain how this information got into my client's

5     credit file.  And we would be happy with that, but that was

6     interrogatory number 6 where we --

7          THE COURT:  That will be produced.

8          MS. KELLY:  Thank you, Your Honor.

9          THE COURT:  So I guess what we're saying is the

10    motion was granted in part and denied in part.  It essentially

11    was granted in all respects except ordering Equifax to produce

12    the employees because the Court doesn't believe they have the

13    authority to do that, but is ordering Equifax to instruct Serco

14    to produce them.  And the limitation on the complaints and

15    lawsuits.

16          So I hope counsel took copious notes because the

17    order is just going to say granted in part and denied in part.

18          MR. MONTGOMERY:  Judge, I'll tell you what we will

19    do, we will sit out in the hallway and make sure that we are in

20    agreement before we leave the building.

21          THE COURT:  All right.

22          MS. KELLY:  Thank you, Your Honor.

23          THE COURT:  Thank you.

24          NOTE:  The hearing concluded at 10:34 a.m.

25          ------------------------------------------------

1

2      C E R T I F I C A T E  of  T R A N S C R I P T I O N

3

4

5          I hereby certify that the foregoing is a true and

6  accurate transcript that was typed by me from the recording

7  provided by the court.  Any errors or omissions are due to the

8  inability of the undersigned to hear or understand said

9  recording.

10

11          Further, that I am neither counsel for, related to,

12  nor employed by any of the parties to the above-styled action,

13  and that I am not financially or otherwise interested in the

14  outcome of the above-styled action.

15

16

17

18

19

20                          /s/ Norman B. Linnell

21                       Norman B. Linnell

22                       Court Reporter - USDC/EDVA

23

24

25